# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| SALLY PEMBERTON, derivatively and on behalf of Patterson Companies, Inc., | Case No. 18-CV-2818 (PJS/HB) |
| Plaintiff, | |
| v. | |
| SCOTT P. ANDERSON; ANN B. GUGINO; MARK S. WALCHIRK; JOHN D. BUCK; ALEX N. BLANCO; JODY H. FERAGEN; SARENA S. LIN; ELLEN A. RUDNICK; NEAL A. SCHRIMSHER; LES C. VINNEY; JAMES W. WILTZ; PAUL GUGGENHEIM; DAVID MISIAK; TIM ROGAN; | ORDER |
| Defendants, | |
| and | |
| PATTERSON COMPANIES, INC., | |
| Nominal Defendant. | |

---

Phillip Kim, THE ROSEN LAW FIRM, P.A.; Mark E. Czuchry, CZUCHRY LAW FIRM, LLC; Timothy W. Brown, THE BROWN LAW FIRM, P.C., for plaintiff.

Patrick S. Williams, Aaron G. Thomas, and Jordan L. Weber, BRIGGS AND MORGAN, P.A., for defendants.

Plaintiff Sally Pemberton, on behalf of nominal defendant Patterson Companies, Inc. ("Patterson"), brings this shareholder-derivative action against 14 current and

former officers and directors of Patterson, alleging violations of federal securities law, breaches of fiduciary duty, unjust enrichment, and waste of corporate assets arising out of Patterson's alleged participation in an antitrust conspiracy. Defendants have moved to dismiss, arguing that Pemberton failed to make a pre-suit demand on Patterson's board of directors. For the reasons that follow, the Court grants defendants' motion and dismisses the complaint without prejudice.

## I. BACKGROUND

Patterson is a Minnesota corporation with its principal executive offices in St. Paul, Minnesota. Compl. ¶ 25. Patterson operates Patterson Dental, which sells supplies, equipment, and services to dental practitioners. Compl. ¶ 2. Patterson is the second-largest distributor of dental supplies and equipment in the United States. Compl. ¶ 2. Patterson and its chief competitors, Benco Dental Supply Co. ("Benco") and Henry Schein, Inc. ("Schein"), together control about 85 percent of the "sale of all dental products and services made through distributors in the United States." Compl. ¶ 3.

Pemberton alleges that Patterson, Benco, and Schein engaged in a long-running and wide-ranging antitrust conspiracy. One aspect of the alleged conspiracy involved a boycott of group purchasing organizations ("GPOs"). In recent years, independent dentists have formed GPOs to combine purchasing power and gain leverage to

negotiate lower prices from distributors.  Compl. ¶ 4.  Pemberton alleges that Patterson, Benco, and Schein conspired to refuse to offer discounted prices or otherwise negotiate with GPOs.  Compl. ¶ 5.  Pemberton also alleges that these distributors engaged in other anticompetitive conduct pursuant to the conspiracy, including fixing margins on dental supplies and equipment, blocking the entry of rival distributors into the market, and agreeing not to poach one another's customers or sales representatives.  Compl. ¶ 5. Pemberton alleges that, as a result of the individual defendants' participation in or failure to prevent this misconduct, Patterson has been damaged in multiple ways, including by being exposed to investigations, legal fees, lawsuits, and settlements. Compl. ¶¶ 214-21.

On February 12, 2018, the Federal Trade Commission ("FTC") filed an administrative complaint against the distributors, accusing them of antitrust violations. Compl. ¶ 6.  The FTC complaint alleges that the distributors have conspired since at least 2013 to fix the prices of dental-supply products and refuse to sell to GPOs.  Compl. ¶ 6.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

### B. Demand Futility

"A shareholder derivative suit is a creation of equity in which a shareholder may, in effect, 'step into the corporation's shoes and . . . seek in its right the restitution he could not demand in his own.'" *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 550 (Minn. 2008) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)). "A derivative action actually belongs to the corporation, but the shareholders are permitted to bring the action where the corporation has failed to take action for itself." *Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn. 2003).

Before filing a derivative suit, a shareholder must ordinarily make a demand on the corporation's board of directors. *Winter v. Farmers Educ. Coop. Union of Am.*, 107 N.W.2d 226, 233 (Minn. 1961).

> The derivative suit is recognized as an extraordinary remedy available to the shareholder as the corporation's representative only when there is no other road to redress. The demand upon the managing directors and shareholders is important in that it gives the management of the corporation an opportunity to consider the merits of the dispute and to determine, in the interests of the corporation and shareholders, whether it might be disposed of without the expense and delay of litigation. The demand requirement as a condition precedent to a shareholder's derivative suit is one not lightly to be dispensed with.

*Id.* (citation, quotation marks, and footnote omitted). A demand is not required, however, "where it is plain from the circumstances that it would be futile."[1] *Id.* at 234. Under Fed. R. Civ. P. 23.1(b)(3)(B), a plaintiff must allege with particularity her reasons for not making a demand.

There is no dispute that Pemberton did not make a demand on Patterson's board. Instead, she alleges that demand would have been futile because seven members of the nine-member board are defendants in this action and therefore face personal liability. Compl. ¶¶ 229-46. Pemberton argues that, whenever a majority of the board are

---

[1]Both sides agree that Minnesota law governs the issue of demand futility. The Court follows suit. *Cf. Gomes v. Am. Century Cos.*, 710 F.3d 811, 815 (8th Cir. 2013).

conflicted in this manner, demand is excused as a matter of law.  Pemberton points to the following language from *Winter*:

> Ordinarily a demand should be made on the board of directors unless the wrongdoers constitute a majority of the board, and a demand should be made on the shareholders unless they are powerless to ratify the wrong alleged or unless the majority of their number is interested.

*Winter*, 107 N.W.2d at 233.  Pemberton has alleged that a majority of the board face a "substantial likelihood" of personal liability, and thus, she argues, demand would have been futile.  *See Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) (where there is a "substantial likelihood" of personal liability, a director cannot consider a demand with the necessary disinterest).

The Court disagrees, for two reasons.  First, *Winter*'s statement that demand is futile whenever a majority of the board are wrongdoers or are otherwise interested is dicta.  *Winter* did not rely on any rule that wrongdoing by a majority of the board automatically renders demand futile; the alleged wrongdoing in *Winter* involved only one member of the board of directors.  Instead, *Winter* found that a demand would have been futile because the business entity at issue was "a loose, nonstock cooperative without salaried officers or employees" and was essentially defunct, as its board had not had a regular meeting in years.[2]  *Winter*, 107 N.W.2d at 233.

_____

[2]Likewise, the aside in *In re UnitedHealth Group Inc. Shareholder Derivative*

(continued...)

More importantly, the legal landscape has changed significantly since 1961, when *Winter* was decided. It is no surprise that *Winter* would cite a conflict of interest on the part of a majority of the board as a paradigmatic example of demand futility; at the time, the only entity that could take action in response to a demand was the board—and thus, if the board was conflicted, a demand could not be considered by an unconflicted decisionmaker. That changed in 1981, when the Minnesota legislature enacted a provision that is now codified at Minn. Stat. § 302A.241. 1981 Minn. Laws 1168. Section 302A.241 allows a board to create a special litigation committee ("SLC") "consisting of one or more independent directors or other independent persons to consider legal rights or remedies of the corporation and whether those rights and remedies should be pursued." Importantly, unlike most other committees that a board may establish, an SLC is not subject to the board's direction or control. *Id.*; *In re UnitedHealth*, 754 N.W.2d at 550.

Because an SLC can consist of "independent persons" and is not subject to the board's direction or control, it can act as a disinterested decisionmaker in considering a demand, even when the board itself is conflicted—indeed, even when *all* members of the board are conflicted. As the Minnesota Supreme Court has recognized, an SLC

_____

[2](...continued)
*Litigation*, 754 N.W.2d at 550 n.5, that demand "may" be excused when the board is conflicted is also dicta, as the demand requirement was not at issue in that case.

"enable[s] a corporation to dismiss or settle a derivative suit despite a conflict of interest on the part of some *or all* directors."  *In re UnitedHealth Grp.*, 754 N.W.2d at 550-51 (emphasis added).  Recent decisions from this District have likewise recognized that § 302A.241 substantially narrows the circumstances in which demand would be futile. *See Kitley ex rel. IsoRay, Inc. v. IsoRay, Inc.*, No. 16-3297 (JRT/DTS), 2017 WL 4737244, at *6 (D. Minn. Oct. 19, 2017); *In re Medtronic, Inc. Derivative Litig.*, 68 F. Supp. 3d 1054, 1061 (D. Minn. 2014); *Kococinski v. Collins*, 935 F. Supp. 2d 909, 917 n.13 (D. Minn. 2013); *see also La. Mun. Police Emps. Ret. Sys. v. Finkelstein*, No. 27-CV-11-23986, 2012 Minn. Dist. LEXIS 251, at *9-10 (Minn. Dist. Ct. May 29, 2012) ("In light of Minn. Stat. § 302A.241, demand is not futile even if a majority of a Minnesota corporation's directors are implicated in the alleged wrongdoing, because a special litigation committee of disinterested directors and/or unaffiliated persons can always be appointed to consider a demand.").

Pemberton argues that § 302A.241 has not changed the law in Minnesota and that the Court must still consider whether the majority of the board members face substantial personal liability to determine whether demand would have been futile.  It is true that some judges have undertaken this kind of analysis, *see, e.g., Kitley*, 2017 WL 4737244, at *7-8, but they have done so in the course of establishing alternate grounds for finding that demand would not be futile (that is, reasons in *addition* to the reason

that a conflicted board can appoint an SLC).  In this Court's view, § 302A.241 renders

this analysis unnecessary; the only question is whether the plaintiff has alleged facts

showing that it would be futile to ask the board to appoint an SLC.  This cannot be

accomplished simply by pleading that the board is conflicted, since the very purpose of

§ 302A.241 is to allow a conflicted board to appoint a disinterested decisionmaker.

The Court therefore rejects Pemberton's argument that § 302A.241 is irrelevant

because the board might not appoint an SLC.  Again, the entire point of § 302A.241 is to

give a *conflicted* board the opportunity to appoint an SLC before a derivative suit is

filed.  Of course, the board may decline to appoint an SLC (although conflicted boards

have often appointed SLCs[3]), but the possibility that a conflicted board may decide not

to appoint an SLC no more excuses demand than the possibility that an unconflicted

board may decide not to take action in response to a demand.  The point is that the

board—whether conflicted or not—must be given an opportunity to address the dispute

before the dispute becomes the subject of a derivative action.

---

[3]*See, e.g., Hockstein v. Collins*, No. 14-CV-4020 (JRT/HB), 2015 WL 5737073, at *1 (D. Minn. Sept. 30, 2015) (Medtronic); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 485 n.1 (D. Minn. 2015) (Target); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1155 (D. Minn. 2009), *appeal dismissed*, 631 F.3d 913 (8th Cir. 2011) (UnitedHealth); *Evans v. Paulson*, No. 05-CV-1818 (PAM/JSM), 2007 WL 1549242, at *1 (D. Minn. May 24, 2007) (Navarre); *Silverstein v. Larson*, No. 04-CV-3450 (ADM/AJB), 2005 WL 435241, at *1 (D. Minn. Feb. 25, 2005) (Synovis); *Abbey v. Control Data Corp.*, 460 F. Supp. 1242, 1243 (D. Minn. 1978), *aff'd*, 603 F.2d 724 (8th Cir. 1979) (Control Data).

Pemberton also argues that interpreting § 302A.241 to abolish the doctrine of demand futility is improper because it would render Minn. R. Civ. P. 23.09 meaningless. This argument ignores the fact that Rule 23.09—a rule of pleading that, like Fed. R. Civ. P. 23.1, imposes a heightened standard for pleading futility—is a procedural rule that provides no substantive rights. *In re UnitedHealth Grp. Inc.*, 754 N.W.2d at 552 (Rule 23.09 is a procedural rule that "grants no rights that one party may enforce against another" and cannot enlarge a litigant's substantive rights).

Setting that aside, although § 302A.241 renders it more difficult to plead demand futility, it does not altogether abolish the doctrine. Indeed, *Winter* itself—which involved an entity that was essentially defunct—is an example of a situation in which demand may well be futile despite § 302A.241. *See also Holdahl v. BioErgonomics, Inc.*, No. 27-CV-10-24236, 2011 Minn. Dist. LEXIS 260, at *13-15 (Minn. Dist. Ct. Jan. 28, 2011) (demand was futile where corporation that had suffered the damage no longer existed and had been reconstituted into a new company), *aff'd*, No. A12-1495, 2013 Minn. App. Unpub. LEXIS 105 (Minn. Ct. App. Feb. 4, 2013).[4] There may be other unusual cases in which the exigencies of the situation preclude the appointment of an SLC. *See In re*

---

[4]It is true that *Holdahl* rejected reliance on § 302A.241 and instead examined the futility of making a demand on the board of directors of the new company, the majority of whom were alleged wrongdoers. But the case can also be understood as an example of a situation in which § 302A.241 may have been of no help, as the injured corporation no longer existed.

*Guidant S'holders Derivative Litig.*, 841 N.E.2d 571, 575 n.3 (Ind. 2006) (noting that demand may be excused if the shareholder can show that there is an imminent threat of irreparable injury). As Pemberton does not allege any circumstances that would preclude Patterson's board from appointing an SLC, the Court concludes that she has failed to adequately plead that demand would have been futile.

### C. Requests for Leave to Amend or a Stay

Pemberton asks for leave to amend her complaint in the event that the Court finds that she has failed to adequately plead demand futility. But Pemberton does not identify any additional facts that she could allege that would establish futility, nor has she submitted a proposed amended complaint. *See* D. Minn. LR 15.1(b). Pemberton's request for leave to amend is therefore denied. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules."); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("Meehan failed to specify the proposed new allegations, and the district court was not required to engage in a guessing game.").

Finally, Pemberton requests that, in lieu of granting defendants' motion to dismiss, the Court stay this action to permit her to make a demand on the board. *See La. Mun. Police Emps. Ret. Sys.*, 2012 Minn. Dist. LEXIS 251, at *11-12 (staying case for six

months to give the plaintiff an opportunity to make a demand); *In re UnitedHealth Grp.*

*Inc. Derivative Litig.*, No. 27-CV-06-8085, 2007 Minn. Dist. LEXIS 40, at *32-33 (Minn.

Dist. Ct. Feb. 6, 2007) (staying case pending outcome of the SLC's investigation).  In

*UnitedHealth*, however, the corporation had already appointed an SLC in response to a

(non-plaintiff) shareholder's pre-suit demand, and the *defendants* requested, as an

alternative to dismissal, a stay pending the SLC's investigation.  *UnitedHealth*, 2007

Minn. Dist. LEXIS 40, at *5-7, *13.  *Louisiana Municipal Police Employees* simply followed

the lead of *UnitedHealth* without analysis.  *La. Mun. Police Emps. Ret. Sys.*, 2012 Minn.

Dist. LEXIS 251, at *13.

Here, unlike *UnitedHealth*, there is no indication that Patterson has appointed an

SLC in response to a pre-suit demand from another shareholder, nor has *Patterson*

requested a stay.  In the Court's view, granting a stay under these circumstances would

be incompatible with *Winter* and the purpose of the demand requirement.  *Winter*, 107

N.W.2d at 233 (a derivative suit is an "extraordinary remedy" available only when there

is "no other road to redress," and, as a "condition precedent" to suit, the demand

requirement "not lightly to be dispensed with" (citation and quotation marks omitted)).

The reason why demand must be made before a derivative action is filed is not

merely to give the board an opportunity to consider whether the corporation should

commence litigation on its own behalf, but also to give the board an opportunity to

*avoid* litigation by exploring other avenues for resolving the dispute. *Id.* ("The demand upon the managing directors and shareholders is important in that it gives the management of the corporation an opportunity to consider the merits of the dispute and to determine, in the interests of the corporation and shareholders, whether it might be disposed of without the expense and delay of litigation."); *Janssen*, 662 N.W.2d at 883 (deciding whether to pursue even meritorious claims involves a "careful balancing" of many factors, including commercial, promotional, public relations, and fiscal considerations, that is "best done by the board of directors"). Permitting a plaintiff to bring a derivative action without making a demand—and then letting the derivative action hang over the head of the board while the plaintiff makes the demand that she should have made before suing—would subvert the purpose of the demand requirement. It would also provide a strong incentive for plaintiffs to ignore the demand requirement in favor of racing to the courthouse. The Court therefore denies Pemberton's request for a stay.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss [ECF No. 19] is GRANTED.

2. Plaintiff's complaint [ECF No. 1] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September 10, 2019          s/Patrick J. Schiltz
                                    Patrick J. Schiltz
                                    United States District Judge